# United States Court of Appeals for the Federal Circuit

06-3059

ERIC R. ALLEN,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Donald G. Gilpin, Gilpin & Keefe, P.C., of Albuquerque, New Mexico, argued for Petitioner.

Stephen D. Lobaugh, Attorney, Appellate Division, United States Postal Service, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, Commercial Litigation, Civil Division, United States Department of Justice, of Washington, DC, and Lori J. Dym, Chief Counsel, Appellate Division, Law Department Civil Practice, United States Postal Service, of Washington, DC. Of counsel were David M. Cohen, Director, Brian M. Simkin, Assistant Director, and Tara K. Hogan, Trial Attorney, Commercial Litigation, Civil Division, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

06-3059

ERIC R. ALLEN,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: October 20, 2006

_____

Before MICHEL, Chief Judge, DYK and PROST, Circuit Judges.

MICHEL, Chief Judge.

Eric R. Allen appeals the final decision of the Merit Systems Protection Board ("Board") affirming his dismissal from the position of United States Postal Service ("USPS") Customer Service Supervisor at the Coronado Postal Station in Santa Fe, New Mexico. Allen v. USPS, No. DE-0752-01-0289-B-1 (M.S.P.B. Sept. 21, 2005). When the full Board denied his petition for review, the decision of the administrative judge ("AJ"), Allen v. USPS, No. DE-0752-01-0289-B-1 (M.S.P.B. Mar. 25, 2005) ("Allen II"), became the final decision of the Board.

We agree with Allen that the Board erred in sustaining a charge of misuse of Postal Service funds in the amount of the outstanding balance on his government-issued credit card ("GICC"). We nonetheless sustain the charge of misuse

of funds in part, in a lesser amount than the outstanding balance on the GICC. We further hold that Allen received adequate notice of and an opportunity to respond to the second charge stated in the Notice of Proposed Removal—i.e., failing to timely pay his GICC—for which his culpability is undisputed. Because the penalty of removal is not unconscionably disproportionate to the sustainable charges, we affirm.

## I.

Allen applied for a lateral transfer within the United States Postal Service from Toledo, Ohio to Santa Fe, New Mexico. He was selected for the position, which entitled him to receive relocation benefits. To facilitate the cross-country move, the USPS gave Allen a $2,500 cash advance for miscellaneous expenses and arranged for him to receive a GICC issued by Citibank, which, pursuant to the General Services Administration contract with Citibank, was to be used solely for temporary housing and other official travel-related expenses.

As a precondition to receiving the GICC, Allen was required to sign a cardmember account agreement with Citibank. By signing this document, Allen agreed to pay in full the outstanding card balance no later than 25 calendar days from the billing statement closing date. Implicit in this agreement, as testified to by the deciding official, Albuquerque Postmaster Edward Schierberl, is that an employee is responsible for paying the Citibank bill even if the USPS has not yet reimbursed the employee for travel-related expenses.

Allen used the GICC beginning on September 16, 1999. His first billing statement, for October 1999, showed an outstanding balance due of $2,595.03; he did not remit any payment. Allen continued to use the GICC, and his November 1999

billing statement indicated a total outstanding balance of $6,446.47. Allen did not make any payment toward the card balance until late March 2000—five months after receiving his October billing statement and four months after the due date of the additional charges contained in the November billing statement. In May 2000, Citibank cancelled Allen's card and referred his account to a collection agency. Allen made another small payment in June 2000 and did not pay off the remaining balance until September 2000.

Allen explains that his failure to timely pay his GICC stemmed initially from "procrastination" in submitting his request for reimbursement. Allen submitted a first reimbursement request to the USPS on November 6, 1999, in the amount of $2,245.76, and a second reimbursement request, dated January 6, 2000, for $3,062.40. Because the $5,308.16 for which Allen sought reimbursement qualified as taxable income, the USPS deducted income taxes in accordance with Allen's previous instructions, reflected in his submission of a federal W-4 income tax withholding form. Accordingly, the USPS reimbursed Allen $4,744.26 and submitted the remaining $563.90 to the Internal Revenue Service ("IRS") on Allen's behalf. Although the AJ found that a single reimbursement check was issued on February 11, 2000, Allen did not deposit the check into his bank account until six weeks later, on March 24, 2000.[1] Allen's wife then immediately wrote a $4,700.00 check to Citibank, which cleared his checking account on March 30.

After being alerted by Citibank to the cancellation of Allen's account, the USPS commenced an internal investigation. Allen's supervisor, Jose Trujillo, interviewed Allen

---

[1] Allen argues that he received the reimbursement check in mid-March and deposited it promptly. However, the AJ found that Allen was paid on February 11, 2000, and Allen has not offered sufficient evidence to overcome this factual finding.

06-3059                                    3

on September 21, 2000 and placed him on paid administrative leave the following day. Based on the results of the internal investigation, Trujillo issued a Notice of Proposed Removal on January 8, 2001. The heading of the Notice of Proposed Removal indicated a single charge of "Misuse of Postal Service Funds", based on Allen's submission of reimbursement requests totaling, and reimbursement in the amount of, $5,308.16.[2] The remainder of the Notice of Proposed Removal, however, explained that Allen had violated the terms of his Citibank cardholder account agreement by remitting his initial Citibank payment over 120 days late, leading to cancellation of his account. Trujillo likened Allen's GICC balance to "an interest free loan" and characterized Allen's behavior as "a serious violation of the trust given to [him]." The Notice of Proposed Removal indicated that Allen's actions violated section 661.3 of the Employee and Labor Relations Manual, which provides:

> Employees must avoid any action, whether or not specifically prohibited by this Code, which might result in or create the appearance of:
>     a. Using the Postal Service for private gain.

Allen and his representatives submitted a response, in which Allen suggested that the USPS was negligent in failing to issue reimbursement checks promptly. On May 2, 2001, Schierberl issued a Letter of Decision sustaining removal, in which he responded as follows:

> I find that if anyone was negligent it was you when you failed to provide the information requested of you during your investigative interview dated September 21, 2001 [sic] that showed that you had paid this amount off. You did not provide this information to me until the meeting of February 1, 2001. . . . I waited for you to present this evidence to me for close to 11

---

[2]     The Notice of Proposed Removal also contained three additional specifications. At the outset of the initial Board hearing, the agency stipulated that those specifications did not constitute misuse of Postal Service funds.

weeks and when you failed to produce the evidence you left me no alternative but to issue the proposed removal.[3]

Allen appealed his removal to the Board, and the AJ affirmed. Allen v. USPS, No. DE-0752-01-0289-I-1 (M.S.P.B. Apr. 30, 2002) ("Allen I"). After the full Board denied Allen's petition for review, Allen v. USPS, No. DE-0752-01-0289-I-1 (M.S.P.B. June 19, 2003), Allen appealed to this court. We vacated and remanded to the Board for a determination of whether Allen was actually charged, in violation of due process, with failing to cooperate with the agency investigation into the cancellation of his GICC. Allen v. USPS, 99 Fed. App'x 924, 928 (Fed. Cir. 2004).

On remand, Schierberl explained that the language in the removal letter referencing Allen's failure to provide the agency with proof of full payment was intended only to rebut Allen's assertion that the agency had been negligent in failing to reimburse him promptly. Schierberl further testified that he would have terminated Allen's employment regardless of whether Allen provided proof of full payment. The AJ again affirmed Allen's removal, Allen II, and the full Board again denied Allen's petition for review. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

**II.**

We must affirm a Board decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported

---

[3] The Notice of Proposed Removal erroneously stated that Allen had an outstanding balance at the time of the letter. Allen had paid his account in full as of September 2000 and had informed Trujillo of this during the investigative interview. However, because Allen did not follow up on Trujillo's request for substantiating documentation, Trujillo concluded that Allen "did not have the information that [he] claimed."

by substantial evidence." 5 U.S.C. § 7703(c). On appeal, Allen argues that the sustained charge of misuse of Postal Service funds is unsupported by substantial evidence. He also argues that he was additionally charged with failing to timely pay his GICC, in violation of due process, because the latter charge was not listed in the heading of the Notice of Proposed Removal. Accordingly, argues Allen, the penalty of removal cannot stand.

**A.**

We agree with Allen that the charge of misuse of Postal Service funds in the amount of the outstanding GICC balance is unsupported by substantial evidence. The AJ adopted Trujillo's explanation that because Allen's ability to charge items on the GICC was "due entirely to an agreement reached between the Postal Service and Citibank", "any charges or cash advances made against the appellant's card involved use of Postal Service funds." Allen I, slip op. at 6. The AJ explained that, by failing to promptly pay his GICC balance, "the appellant had personal use of Postal Service's funds for an extended period of time." Id., slip op. at 9. On remand, the AJ adopted the characterization of the outstanding GICC balance as "an interest-free loan at the agency's expense." Allen II, slip op. at 4.

It is important to understand that Allen's card expenditures involve funds loaned by <u>Citibank</u>, not by the <u>Postal Service</u>. Although it is true that Allen was eligible for the GICC only by virtue of his Postal Service employment, this does not change the underlying financial mechanisms at play. As the card's outstanding balance stood unpaid in violation of the cardholder agreement, Allen could only have been misusing Citibank funds. Thus, the proper starting place for analysis of the charge of misuse of

Postal Service funds is the point at which Allen first came into possession of Postal Service funds: the issuance of a reimbursement check on February 11, 2000.

Allen waited nearly six weeks before depositing the reimbursement check into his account in late March 2000. During that six-week time period, Allen might be said to have misused the full $5,308.16, but on balance, we think Allen could not be charged with misusing funds until he actually had use of the funds through the deposit of the check in his account. Once Allen deposited the reimbursement check, his wife promptly paid Citibank $4,700.00. At that point, then, Allen was misusing Postal Service funds representing the difference between the reimbursement amount and the payment made, i.e., $608.16.[4] In June 2000, Allen submitted another payment to Citibank in the amount of $400.00. Thus, beginning in June, Allen was misusing Postal Service funds in the remaining amount of $208.16. This misuse continued until final payment was remitted in September 2000.

In sum, we hold that the charge of misuse of Postal Service funds is only sustainable in part, in the amounts of $608.16 for the three months between March and June 2000 as well as $208.16 for the three months thereafter.

**B.**

Allen also argues that he was charged with paying his GICC late, in violation of due process, because that charge was not listed explicitly in the heading of the Notice of Proposed Removal. An agency "must notify the employee of the conduct with which

---

[4]     We agree with the USPS that because the $563.90 difference between the reimbursement request and reimbursement check was earmarked for (and transferred to) the IRS pursuant to Allen's instructions in his federal W-4 income tax withholding form, those funds were also "misused"—a point Allen's counsel disputed at oral argument. The fact that the funds were paid to the IRS on Allen's behalf did not relieve Allen of his obligation to pay Citibank the full amount of his reimbursement.

he is charged 'in sufficient detail to permit the employee to make an informed reply.'" Lachance v. MSPB, 147 F.3d 1367, 1371 (Fed. Cir. 1998) (quoting Pope v. USPS, 114 F.3d 1144, 1148 (Fed. Cir. 1997)). As explained in Lachance, Allen's exclusive focus on the heading of the Notice of Proposed Removal is misplaced, as charged offenses are to be gleaned from the Notice of Proposed Removal as a whole, particularly the specification(s) supporting the heading. Id. at 1372 ("[T]he agency must prove what it charges; where the specification contains the only meaningful description of the charge, Nazelrod supports the Board's conclusion that the agency must prove what it has alleged in the specification.") (discussing King v. Nazelrod, 43 F.3d 663 (Fed. Cir. 1994)).

Although here, both the agency and the AJ mistakenly conflated misuse of Postal Service funds with failure to timely pay a GICC each month, which are in actuality quite distinct charges, the elements of each are set forth clearly in the Notice of Proposed Removal. The specification in the Notice of Proposed Removal incorporates by reference the Citibank cardholder agreement, in which Allen agreed to pay his outstanding balance in full within 25 calendar days of the billing statement closing date. It informs Allen that he "did not pay [his] credit card as [he] agreed to" and documents Allen's payment activity: an initial payment more than 120 days late, card cancellation by Citibank, and an additional payment several months later. The Notice of Proposed Removal concludes that Allen's actions violate the USPS Standards of Conduct prohibiting employees from "[u]sing the Postal Service for private gain." On its face the specification appears to provide sufficient notice as to late payment. In any event, Allen testified at the remand hearing that although the "actual charge" in the heading of the

Notice of Proposed Removal was "misuse of Postal Service funds", he understood the USPS' primary concern to be with his "credit card being late" and responded to both charges. This admission is unsurprising in view of the clarity of the specification.

Likewise, the AJ's opinion makes clear that the AJ recognized that Allen was also charged with failing to timely pay his GICC. The AJ noted Schierberl's testimony that Allen "fail[ed] to pay as required by the contractual agreement between Citibank and the appellant." Allen II, slip op. at 9. The AJ also explained that, at the time the disciplinary action was taken, Allen's card "had already been canceled for violations of the credit card agreement." Id., slip op. at 10. The AJ concluded that the agency's decision to remove Allen turned on Allen's "fail[ure] to comply with the terms of the GICC agreement when he received reimbursement of funds owed to Citibank . . . . That agreement required payment of the amount due in full within 25 days of the closing date of the billing statement in which the charge(s) appeared." Id., slip op. at 13. Although this latter statement conflates the charges by mistakenly linking Allen's obligation to pay Citibank with his receipt of reimbursement from the Postal Service, it nonetheless recognizes independent misconduct in the late payment.[5]

As Schierberl testified, the agency requires its employees to pay the Citibank account in full regardless of when the employee receives reimbursement. Thus, Allen's reimbursement requests are irrelevant to the charge clearly set forth in the specification:

---

[5] This conclusion is unaffected by Schierberl's testimony on remand that Allen's only offense was misuse of Postal Service funds and that Allen was not charged with failing to timely pay his GICC. The charges must be gleaned from the Notice of Proposed Removal. Schierberl's testimony merely highlights the agency's ongoing confusion in separating the two distinct charges. Since interpretation of the Notice of Proposed Removal is a legal conclusion, we are not bound by the opinion of Mr. Schierberl.

failing to timely pay the GICC. Allen does not dispute the outstanding balances due on his GICC beginning with the October 1999 billing statement. He disputes neither that his initial payment was submitted over 120 days late nor that an outstanding balance remained on his card until September 2000. Therefore, the evidence before the Board unquestionably supports sustaining the charge of failure to timely pay the GICC.

### III.

We must defer to the agency's determination of disciplinary action unless the penalty is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." Villela v. Dep't of the Air Force, 727 F.2d 1574, 1576 (Fed. Cir. 1984) (citation omitted). Here, that is not the case. The agency considered the relevant Douglas factors and provided a thorough explanation of why the penalty of removal was appropriate. See Douglas v. Veterans Admin., 5 M.S.P.R. 280, 306 (1981). Schierberl noted the appellant's satisfactory performance since joining the Postal Service in 1994, but explained that this factor was offset by Allen's position as a supervisor and failure to accept responsibility for the cancelled card. Schierberl explained to Allen that he had demonstrated an attitude that it was "ok to follow the rules when you get around to it or to blame other[s] for your actions" and that Allen's "misconduct destroyed [his] credibility and trust" so removal was the only appropriate sanction.

There can be no doubt that Allen's behavior violated section 661.3 of the Employee and Labor Relations Manual, with which he was charged. But for Allen's employment with the Postal Service, he would not have been eligible to receive the GICC. He failed to pay Citibank in accordance with his cardmember agreement. Even

after he had been reimbursed, Allen failed to timely pay the amount due on his GICC. This behavior clearly constitutes Allen's "[u]sing the Postal Service for private gain."

We reject Allen's alternative argument that a remand to the agency is appropriate in light of the parties' stipulation to dismiss three of the four original specifications contained in the Notice of Proposed Removal. The dismissed specifications involved other expense reimbursements, which the USPS conceded did not constitute misuse of Postal Service funds. However, voluntary dismissal of these specifications would not have changed the agency's choice of penalty, as the explanation of wrongdoing in the remaining specification in the Notice of Proposed Removal focuses solely on the $5,308.16 reimbursement request and corresponding late payments to Citibank.

## IV.

In sum, the agency and Board erred in conflating the charges of misuse of Postal Service funds and failing to timely pay the GICC. The evidence does not support sustaining a charge of misuse of Postal Service funds for the full outstanding GICC balance. Instead, it supports a charge of misuse of Postal Service funds only from the time that the USPS reimbursed Allen's travel-related expenses and only for the smaller amounts representing the difference between the reimbursed amount and the sequential payments remitted to Citibank. The evidence certainly supports a conclusion that Allen violated USPS policy and his GICC cardholder agreement by failing to timely pay his GICC. We further hold that the Notice of Proposed Removal as a whole provided Allen with adequate notice of and an opportunity to respond to both charges; Allen did in fact respond to both charges. Finally, we hold that the penalty of removal is not unconscionably disproportionate to the sustainable charges and that it clearly would

have been chosen by the agency even if the amounts had been correctly set forth as we do above.  Therefore, we affirm.

<u>AFFIRMED</u>.
