NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDDIE L. BROWN, JR.,**
*Petitioner,*

v.

**DEPARTMENT OF JUSTICE,**
*Respondent.*

---

2011-3171

---

Petition for review of the Merit Systems Protection Board in case no. AT-0752100609-I-1.

---

Decided: January 13, 2012

---

EDDIE L. BROWN, JR., of Doraville, Georgia, pro se.

MICHAEL N. O'CONNELL, Trial Attorney, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director.

---

Before PROST, O'MALLEY, and REYNA, *Circuit Judges*.

PER CURIAM.

Eddie L. Brown, Jr., pro se, appeals the decision of the Merit Systems Protection Board ("Board") affirming the Bureau of Prisons' ("agency" or "BOP") decision to remove him from his position as a correctional officer because he tested positive for marijuana use. Mr. Brown does not dispute the results or validity of his drug test; rather, he argues that the agency based its removal decision on improper considerations. Because we see no error in the Board's decision, we *affirm*.

BACKGROUND

Mr. Brown was employed as a correctional officer by the agency at the United States Penitentiary in Atlanta, Georgia. Pursuant to the BOP's Drug Free Workplace Program, Mr. Brown participated in a random urinalysis test conducted on December 10, 2009, which revealed positive results for marijuana. Five days after learning his test results, Mr. Brown submitted an affidavit explaining that his consumption of marijuana was unintentional. Specifically, he stated that, during his visit to his brother's house for Thanksgiving, he was around individuals who were smoking marijuana, and he also unknowingly consumed marijuana-laced cookies baked by his brother's fiancé. Mr. Brown stated that, at the time, he did not know the cookies contained marijuana and only discovered that fact much later, when he discussed the results of his drug test with his brother.

On March 5, 2010, the agency issued its notice of proposed removal based on Mr. Brown's drug test results, to which Mr. Brown filed a written response. On April 9, 2010, the agency's deciding official issued a decision removing Mr. Brown from his position. The official found that Mr. Brown's explanation that he "unwillingly consumed a lot of the cookies" was not credible, *see* Appendix

("App.") 24, and that his position as a law enforcement officer responsible for the custody of convicted drug offenders made the misconduct particularly egregious. Accordingly, the official determined that lesser sanctions, such as demotion, would be ineffective.

Mr. Brown appealed his removal to the Board, where an administrative judge held a hearing in which Mr. Brown and various other witnesses testified. Before the administrative judge, Mr. Brown reiterated his primary defense that his ingestion of the marijuana was unintentional. He also raised several procedural challenges, including that it was improper for the deciding official to have received information about the specific metabolite levels of marijuana in his system (which can show how recently and how much marijuana had been ingested), and that the agency did not consider the relevant penalty factors and instead applied a zero tolerance policy based on a "Blue Letter" issued by the Director of the Bureau of Prisons. The administrative judge rejected Mr. Brown's contentions, finding that: (1) the agency proved its charge of providing a specimen that tested positive for an illegal drug, a charge that does not require intent; (2) there was a nexus between the agency's action and the efficiency of the service; (3) the penalty of removal was reasonable, in part because he found Mr. Brown's testimony about his unknowing consumption of marijuana-laced cookies to be "less than credible" in light of many inconsistencies with other witnesses' versions of the events; (4) the agency gave *bona fide* consideration to the relevant penalty factors; and (5) the agency did not violate any procedures when it obtained the metabolite levels from Mr. Brown's drug tests. Accordingly, the initial decision affirmed the agency's action.

Mr. Brown timely petitioned the Board to review the administrative judge's initial decision. The Board denied

the petition for review because it found that Mr. Brown had not presented any new evidence and that the administrative judge did not err in interpreting a law or regulation. *See* 5 C.F.R. § 1201.115. The Board also noted that Mr. Brown's argument that the Director's "Blue Letter" resulted in a zero tolerance removal policy was "both factually and legally meritless." The Board similarly found no merit in Mr. Brown's procedural challenges. Accordingly, the initial decision of the administrative judge became final, "[e]xcept as modified by th[e] [Board's] final order." *Brown v. Dep't of Justice*, MSPB Docket No. AT-0752-10-0609-I-1 (Final Order May 27, 2011) ("Final Order").

Mr. Brown timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our scope of review is limited by statute, and we may only set aside agency action, findings, or conclusions found to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We accord significant deference to an agency's penalty determinations, and we will not overturn a penalty "unless the severity of the agency's action appears totally unwarranted in light of all the factors." *Brown v. Dep't of Navy*, 229 F.3d 1356, 1364 (Fed. Cir. 2000). In other words, we will defer to the agency's determination unless the penalty is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Allen v. U.S. Postal Serv.*, 466 F.3d 1065, 1071 (Fed. Cir. 2006) (citation omitted).

On appeal, Mr. Brown advances three arguments: (1) the agency violated his privacy rights, and other laws and procedures, by obtaining and relying on the specific metabolite levels of marijuana in his system shown in the urinalysis test results; (2) he was denied due process because the Director's "Blue Letter" instructed the deciding official to terminate Mr. Brown and effectively decided his case from the outset; and (3) the deciding official erred in considering Mr. Brown's required drug counseling as an admission of guilt. For the reasons explained below, none of these arguments warrants upsetting the agency's decision in this case.

First, Mr. Brown contends that the only information the agency should have received about his drug test was that it was positive for marijuana, and that the specific metabolite levels should have remained confidential under the 1974 Privacy Act, 5 U.S.C. § 552a, the Health Insurance Portability and Accountability Act ("HIPAA"), and policies of the Department of Health and Human Services. The administrative judge in this case found that, although the medical review officer who reviews the test results cannot disclose the numerical values of the metabolite levels initially, agencies are permitted to request and review that information for positive drug tests. Indeed, Jacqueline Justice, the agency's National Drug Free Workplace Coordinator, provided unrebutted testimony before the administrative judge that she makes such requests on all positive drug tests. The government also points to specific provisions in the Justice Department's program statement implementing the Drug Free Workplace program, as well as in the 1974 Privacy Act, indicating that records on positive drug tests may be disclosed to agency employees on a "need to know" basis. *See* Program Statement 3735.04, Section 17 (June 30, 1997) at App. 41; 5 U.S.C. § 552a(b).

In this case, Mr. Brown argued that he tested positive for marijuana based on an unintentional, one-time occurrence about two weeks prior to the urinalysis test. Given that argument, Mr. Brown directly put at issue the question of how much marijuana he consumed, and how recently he consumed it. Indeed, the medical review officer in this case testified that the metabolite levels shown in Mr. Brown's tests contradicted Mr. Brown's version of the events. In this case, there can be no question that the agency had a "need to know" the numerical values shown in Mr. Brown's test results, and consideration of that information was not error.[1]

Second, Mr. Brown contends that the Director's "Blue Letter" required his termination from the outset and, therefore, denied him due process because he did not have a fair opportunity to present his case. The administrative judge heard testimony that the Blue Letter in this case was "not a policy or a mandate of the agency," but was "merely the Director's thoughts on where the agency should be going on the issue." *Brown v. Dep't of Justice*, MSPB Docket No. AT-0752-10-0609-I-1, at 12 (Aug. 5, 2010) ("Initial Decision"). In light of this, and based on the deciding official's testimony, the administrative judge concluded that the deciding official did not rigidly apply a zero tolerance policy and instead "duly weighed the relevant factors in arriving at the penalty of removal." *Id.* Likewise, the Board found that "appellant's assertion that his removal was the predetermined result of the agency's alleged Blue Letter imposed mandatory removal policy for

---

[1] We do not suggest that a petitioner must always put the amount and frequency of his or her drug use at issue before an agency has a need to know the details of a drug test. We find only that, in this case, such a necessity clearly was present.

drug use to be both legally and factually meritless." Final Order, at 2.

We find no error in the Board's conclusion that Mr. Brown's argument on this point is without merit. The deciding official expressly considered the relevant factors, including Mr. Brown's prior work record, receipt of awards, years of service, and lack of disciplinary record. He found, however, that "[t]hese facts . . . do not negate the egregiousness of your misconduct or shield you from it." App. 25. Based on this record, we do not find error in the Board's conclusion that the agency properly considered the relevant penalty determination factors.

Finally, Mr. Brown argues that the deciding official improperly held Mr. Brown's participation in drug counseling against him. Mr. Brown contends that this erroneous consideration "came to light during the Petitioner[']s hearing" before the administrative judge, where, according to Mr. Brown, the official said that "he could not understand why a guilty person would go to counseling." Pet'r's Resp. to Notice of Overdue Informal Br. 2. In response, the government argues that Mr. Brown has waived this argument because he did not raise it before the Board, he has failed to provide transcript pages to support his characterization, and his argument is not supported by the removal decision or the initial decision. In his reply brief, Mr. Brown asserts that he did, in fact, raise this argument in his written submission to the administrative judge and again before the Board, but he does not provide any documents to support that assertion.

Regardless of whether Mr. Brown has waived this argument, it is without merit. The agency's removal decision does refer to Mr. Brown's counseling, but not in a critical manner. *See* App. 24 ("I also considered that although you have received counseling through the Em-

ployee's Assistance Program (EAP) and have attended several counseling sessions, you did not voluntarily present yourself as an illegal drug user prior to being identified through the Agency's Random Drug Testing."). There is nothing from that decision to indicate that the deciding official held this against Mr. Brown or considered it an admission of guilt. Given that, and considering that independent bases justify the agency's removal decision, we see no reason to set aside the Board's decision in this case.

CONCLUSION

For the reasons stated above, the decision of the Board is *affirmed*.

**AFFIRMED**

COSTS

Each party shall bear its own costs.