# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DEREK R. WILLIAMS,<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF THE AIR FORCE,<br>Agency. | DOCKET NUMBER<br>PH-0752-14-0438-I-2<br><br><br>DATE: November 29, 2016 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Shaun Southworth, Esquire, Atlanta, Georgia, for the appellant.

Jeremiah Crowley, Esquire, Joint Base Andrews, Maryland,
    for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1     The appellant has filed a petition for review of the initial decision, which affirmed his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to supplement the administrative judge's disparate treatment analysis, we AFFIRM the initial decision.

### DISCUSSION OF ARGUMENTS ON REVIEW

¶2 Effective October 21, 2012, the agency converted the appellant from his position as a GS-9 Computer Assistant to a GS-11 Information Technology (IT) Specialist (Systems Administration) at the agency's Expeditionary Center, Mission Support Operations. *Williams v. Department of the Air Force*, MSPB Docket No. PH-0752-14-0438-I-1, Initial Appeal File (IAF), Tab 4 at 66, 68-69, 74, Tab 14 at 25. On October 11, 2013, the agency proposed to remove him on the basis of one charge of "failure to complete training" with a single underlying specification, which explained that he had failed to obtain a Level III Information Assurance Technician (IAT) Certification within 6 months of his appointment, as required by Department of Defense (DOD) Directive 8570.01-M for incumbents in his position. IAF, Tab 4 at 43. In a November 15, 2013 decision letter, the deciding official determined that the reasons stated in the proposal notice were supported by the evidence and imposed the removal effective November 16, 2013. *Id.* at 21-23.

¶3    The appellant timely appealed his removal to the Board and requested a hearing. IAF, Tab 1. The appellant argued that the agency charged him with "failure to complete training"—not "failure to obtain a certification"—and that it could not prove the "failure to complete training" charge because it did not provide him any training and could not show that any specific training was required as a condition of his employment. IAF, Tab 16 at 13-14. The appellant also raised affirmative defenses of harmful procedural error and a due process violation in connection with the allegedly defective charge, as well as a race discrimination claim. *Id.* at 15; IAF, Tab 17 at 2-6. Prior to the scheduled hearing, the appellant notified the administrative judge that he would be unavailable for the hearing as a result of an emergency medical procedure, and, at the appellant's request, the administrative judge subsequently dismissed the appeal without prejudice to refiling. IAF, Tabs 18-19.

¶4    On December 1, 2014, the Board's regional office automatically refiled the appeal. *Williams v. Department of the Air Force*, MSPB Docket No. PH-0752-14-0438-I-2, Appeal File (I-2 AF), Tab 1. After holding the requested hearing, the administrative judge affirmed the removal, finding that the agency proved the charge, established nexus, and showed that the penalty was reasonable. I-2 AF, Tab 13, Initial Decision (ID) at 3-9, 15-18. She also denied the appellant's affirmative defenses. ID at 9-15.

¶5    The appellant has filed a petition for review of the initial decision, the agency has responded in opposition, and the appellant has replied to the agency's response. Petition for Review (PFR) File, Tabs 1, 3-4.

The administrative judge correctly found that the agency proved the charge.

¶6    As noted above, the agency proposed to remove the appellant based on one charge of "failure to complete training," supported by a single specification, which described his failure to complete his Level III IAT Certification within 6 months of his appointment. IAF, Tab 4 at 43. The specification further indicated that Information Assurance (IA) certification was a condition of his

employment and that DOD Directive 8570.01-M required him to achieve a Level III IAT Certification within 6 months of appointment. *Id.* The administrative judge sustained the charge, finding that the agency established by preponderant evidence that: (1) the appellant's position required him to achieve Level III IAT Certification within 6 months of entering into his position; and (2) he failed to do so. ID at 9.

¶7      The appellant argues on review that the administrative judge abused her discretion by construing the agency's "actual charge of 'failure to complete training' as the completely separate and distinct charge of 'failure to obtain certification.'" PFR File, Tab 1 at 16-20. He further argues, as he did below, that the agency did not prove the charge of "failure to complete training" because "there was no training provided" and "no specific training was required as a condition of employment." *Id.* at 18; PFR File, Tab 4 at 5-6.

¶8      An employee must receive advanced written notice stating the specific reasons for the proposed adverse action. 5 U.S.C. § 7513(b)(1); *Smith v. Department of the Interior*, 112 M.S.P.R. 173, ¶ 5 (2009). To satisfy this notice requirement, an agency is required to state the specific reasons for a proposed adverse action in sufficient detail to allow the employee to make an informed reply. *Smith*, 112 M.S.P.R. 173, ¶ 5. Because the appellant must have full notice of the charges against him, the Board cannot consider or sustain charges or specifications that are not included in the proposal notice. *Id.* However, the Board will not technically construe the wording or specifications of a charge. *Id.* In resolving the issue of how a charge should be construed, the Board examines the structure and language of the proposal notice and the decision notice, as well as the accompanying specifications and circumstances. *George v. Department of the Army*, 104 M.S.P.R. 596, ¶ 7 (2007), *aff'd*, 263 F. App'x. 889 (Fed. Cir. 2008); *see Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202-04 (1997).

> Here, although the name of the charge "failure to complete training" is imprecise, the specification precisely describes the charged

conduct. In relevant part, the specification quoted the appellant's Standard Core Personnel Document, which provided: "IA Certification is a condition of employment . . . the incumbent of this position must achieve Level III [IAT] certification within six months of assignment of these duties[.] Failure to receive the proper IA certification may result in removal from this position." IAF, Tab 4 at 43. The specification further stated that, "[a]s of this date, you have failed to satisfactorily complete Level III [IAT] Certification." *Id.* In addition, the proposal notice set forth a timeline of relevant events leading up to the proposed action. *Id.* at 43-44. Notably, the proposing official wrote, On 13 Sep 2013, I afforded you a final opportunity to complete your Level III Assurance Certification. I reminded you the [L]evel III certification is a condition of employment . . . I directed you to achieve your [L]evel III Information Assurance Certification, and turn in your Level III Certification to me by close of business 4 October 2013 . . . On Monday, 7 October 2013, I met with you and gave you a memorandum for record documenting that you have failed to attain your Level III [IAT] certification by the stated 4 October 2013 deadline. *Id.* at 44.

The proposing official further noted that, pursuant to DOD Directive 8570.01-M,

[N]ew hires . . . must obtain the appropriate certification within 6 months of being assigned IA functions. As a result of your failures to complete Level III [IAT] certification, your [ ] System Administrator privileges were revoked on 31 July 2013. Consequently, you are no longer able to perform the critical duties of your position[.] Id.

¶9 Despite the clarity of the specification and accompanying circumstances, the appellant urges the Board to technically construe the charge by its label and require the agency to prove the elements of a "failure to complete training" charge. PFR File, Tab 1 at 18. However, the appellant's "exclusive focus on the heading of the Notice of Proposed Removal is misplaced, as charged offenses are to be gleaned from the Notice of Proposed Removal as a whole, particularly the specification(s) supporting the heading." *Allen v. U.S. Postal Service*, 466 F.3d 1065, 1070 (Fed. Cir. 2006) (finding that, although the name of the charge in the proposal notice was "misuse of Postal Service funds," the specification

underlying the charge afforded the appellant sufficient notice of the elements of the distinct charge of failure to timely pay his Government-issued credit card). Therefore, we reject the appellant's contention that the charge must be technically construed by its label without reference to the rest of the proposal notice.

¶10    Construing the charge in light of the accompanying specification and the surrounding circumstances, including those explicitly discussed in the proposal notice, it is clear that the proposed removal was based on the appellant's failure to attain his Level III IAT Certification within 6 months of his appointment, which was a DOD requirement and a condition of his employment. Thus, we agree with the administrative judge's implicit interpretation of the charge and find that the proposal notice charged the appellant with failure to fulfill a condition of employment; namely, a Level III IAT Certification within 6 months of his appointment. ID at 3-9.

¶11    To sustain a charge of failure to fulfill a condition of employment, the agency must show that: (1) the requirement at issue is a condition of employment; and (2) the appellant failed to meet that condition. *Gallegos v. Department of the Air Force*, 121 M.S.P.R. 349, ¶ 6 (2014). As noted above, the administrative judge found that the agency established by preponderant evidence that: (1) the appellant's position required him to achieve Level III IAT Certification within 6 months of entering into his position; and (2) he failed to do so. ID at 9. Because the appellant has not challenged these findings on review, and because we discern no error in the administrative judge's well-reasoned findings regarding these matters, we will not disturb them. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no basis to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

<u>The administrative judge correctly denied the appellant's harmful procedural error and due process affirmative defenses.</u>

¶12    As noted above, the administrative judge found that the appellant failed to prove his harmful procedural error or due process affirmative defenses because the agency's proposal letter sufficiently placed him on notice of the charge against him and afforded him a reasonable opportunity to respond.[2]  ID at 11.  On review, the appellant challenges this finding, arguing that the agency's mislabeled charge deprived him of his right to reply to the charge and caused the agency to reach a different conclusion than it would have reached absent the error.  PFR File, Tab 1 at 14-15, 17, Tab 4 at 4-5.  He also argues that the administrative judge failed to discuss his evidence and did not sufficiently explain the rationale underlying her determination that the proposal letter afforded him notice and a meaningful opportunity to respond.  PFR File, Tab 1 at 15-16.

¶13    The Board has held that due process requires that a Federal employee facing removal be provided "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Alford v. Department of Defense*, 118 M.S.P.R. 556, ¶ 6 (2012) (quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985)).  Here, as discussed above, the appellant received written notice that clearly explained the reason for his proposed removal.  IAF, Tab 4 at 43-45.  He further had an opportunity to make both a written and an oral response to the deciding official, which he did, and the deciding official considered those responses in deciding to impose the removal.  *Id.* at 21, 30, 34-35, 37, 39-41.  Because the appellant was

---

[2] In the initial decision, the administrative judge identified the appellant's claim, that the agency incorrectly charged him with failure to complete training instead of failure to obtain Level III IAT Certification, as a harmful procedural error claim but considered the claim under the framework of a due process claim.  ID at 9-11.  Although the administrative judge appears to have conflated the two affirmative defenses, we discuss them separately here and agree with her finding that the appellant failed to establish an affirmative defense in connection with the agency's allegedly defective charge.

adequately notified of the charges against him and afforded an opportunity to respond, we find that he has failed to establish any due process violation.

¶14     A harmful procedural error occurs when the appellant proves that the agency committed a procedural error, whether regulatory or statutory, that likely had a harmful effect on the outcome of the case before the agency. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 43 (2004). Here, the appellant argues that the agency committed a harmful procedural error because, "since the agency charged [him] with failure to complete training it's [sic] conclusion should have been that the charge could not be sustained because it failed to meet all the elements of the charge." PFR File, Tab 4 at 5.

¶15     The appellant's contention that the agency could not prove the charge of "failure to complete training" does not implicate a harmful procedural error; rather, this argument goes to the merits of the removal action. As discussed above, we find that the agency proved the charge, as construed in light of the specification and accompanying circumstances, by preponderant evidence. We discern no basis to conclude that the label of the charge constituted a harmful procedural error. To the contrary, we find that the appellant has not been harmed in the least because the agency labeled the charge as "failure to complete training" rather than a more precise label, such as "failure to obtain certification" or "failure to fulfill a condition of employment." *Otero*, 73 M.S.P.R. at 203 (finding that the appellant was "not harmed in the least" because the agency used a "broad label").

We modify the administrative judge's disparate treatment analysis but still find that the administrative judge correctly denied the appellant's affirmative defense of race discrimination.

¶16     The appellant also contests the administrative judge's finding that he failed to prove his affirmative defense of race discrimination. ID at 11-15; PFR File, Tab 1 at 20-29, Tab 4 at 6-8. In particular, he argues, as he did below, that the agency provided formal training to Caucasian employees at the Expeditionary

Center, but denied him the formal training needed to pass the Level III IAT Certification test, which led to his removal. IAF, Tab 16 at 8, 12, 15; PFR File, Tab 1 at 20-29, Tab 4 at 6-8. In the initial decision, the administrative judge considered the appellant's disparate treatment claim and found that he failed to "demonstrate that he was treated more harshly than an individual who was not a member of his protected group." ID at 13. Although we agree with the administrative judge's ultimate conclusion that the appellant failed to prove this affirmative defense, we modify the initial decision to supplement the administrative judge's disparate treatment analysis.

¶17 When an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 28, 30 (2016); *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 51 (2015). Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). *Naval Station Norfolk Hearing 2 v. Department of the Navy*, 123 M.S.P.R. 144, ¶ 28 (2016); *see Savage*, 122 M.S.P.R. 612, ¶ 51. If the appellant meets his burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. *Naval Station Norfolk Hearing 2*, 123 M.S.P.R. 144, ¶ 28; *Savage*, 122 M.S.P.R. 612, ¶ 51. If the Board finds that the agency has made that showing, its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action. *Naval Station Norfolk Hearing 2*, 123 M.S.P.R. 144, ¶ 28; *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶18 An appellant may meet his initial burden of showing that race was a motivating factor in the adverse action through evidence of disparate treatment of

similarly situated comparators. *See Savage*, [122 M.S.P.R. 612](), ¶ 51. For another employee to be deemed similarly situated for purposes of an affirmative defense of discrimination based on disparate treatment, all relevant aspects of the appellant's employment situation must be "nearly identical" to that of the comparator employee. *Hooper v. Department of the Interior*, [120 M.S.P.R. 658](), ¶ 6 (2014); *Ly v. Department of the Treasury*, [118 M.S.P.R. 481](), ¶ 10 (2012). Thus, to be similarly situated, a comparator must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Hooper*, [120 M.S.P.R. 658](), ¶ 6; *Ly*, [118 M.S.P.R. 481](), ¶ 10.

¶19 Here, the appellant argues that R.T., M.C., and F.F. are similarly situated comparators who were treated more favorably by the agency because the agency sent them to formal training, but did not send him to formal training, which resulted in his failure to pass the Level III IAT Certification test and led to his removal. PFR File, Tab 1 at 20-25, Tab 4 at 6-7. The appellant asserts that R.T., a Caucasian Help Desk Technician who worked in the same unit and had the same first- and second-level supervisors as the appellant, is the "key comparator." PFR File, Tab 1 at 20-25, Tab 4 at 6-7. According to the appellant, the agency sent R.T. to formal training to obtain her IAT Certification and later sent her for additional training that was not necessary for her position. PFR File, Tab 1 at 23. The appellant also argues that two other Caucasian employees, Infrastructure Mechanics M.C. and F.F., received training but that the agency denied training for two African-American employees, E.S. and K.W., and one Filipino-American employee, R.B. *Id.* at 24; IAF, Tab 16 at 18-19.

¶20 We find that M.C. and F.F. are not similarly situated to the appellant, however, because they were Infrastructure Mechanics, while the appellant was an IT Specialist, and they were not required to obtain an IAT Certification as a condition of their employment. IAF, Tab 16 at 18-19; I-2 AF, Tab 6, Hearing Compact Disc (HCD) (testimonies of J.E. and S.B.). In addition, the appellant's

first- and second-level supervisors, J.E. and S.B., explained that M.C. and F.F. were sent to receive training on new telephone equipment that was being installed because their job duties required them to install and configure the new equipment. HCD (testimonies of J.E. and S.B.).

¶21     R.T., on the other hand, is similarly situated to the appellant because she had the same first- and second-level supervisors as the appellant and her position required her to obtain an IAT Certification as a condition of employment. IAF, Tab 16 at 18; HCD (testimony of J.E.). Even though the agency provided formal training to R.T. but did not provide such training to the appellant, the Board must still consider whether all of the evidence, taken together as a whole, is sufficient to satisfy the appellant's initial burden of showing, by preponderant evidence, that his race was a motivating factor in his removal. *See Gardner*, 123 M.S.P.R. 647, ¶¶ 28-30; *Savage*, 122 M.S.P.R. 613, ¶ 51. For the reasons discussed below, however, we find that preponderant evidence does not establish that race was a motivating factor in the agency's decisions regarding training or in its decision to remove the appellant for failure to obtain the required certification.

¶22     Although R.T., a similarly situated employee outside the appellant's protected class, was provided formal training, J.E. and S.B. explained that R.T. properly requested the training by submitting a written request in the correct format describing the requested training and its impact on the mission. HCD (testimonies of J.E. and S.B.). The appellant avers that he requested training multiple times prior to his response to the proposed removal. PFR File, Tab 1 at 21-23. However, both his first- and second-level supervisors testified that he did not request formal training to prepare for the Level III IAT Certification test before he responded to the proposed removal. HCD (testimonies of J.E. and S.B.). The administrative judge credited the supervisors' testimonies, finding that the appellant did not request formal training in writing until after he responded to the proposed removal, despite being included on a series of emails regarding requesting and purchasing training vouchers. ID at 12; IAF, Tab 16

at 198-99. The appellant also argues that he was not required to request formal training in writing, but that he did so in a November 2012 budget plan that he submitted to his second-level supervisor in January 2013. PFR File, Tab 1 at 8, 21, 26. However, the record does not contain a November 2012 budget plan in which the appellant requested Level III IAT training. *See, e.g.*, IAF, Tabs 4, 14, 16; I-2 AF, Tabs 8-9. Thus, we find no basis to disturb the administrative judge's determination that the appellant failed to properly request training until after the agency proposed his removal in October 2013—nearly 6 months after the date by which he was required to have obtained the Level III IAT Certification. ID at 12; IAF, Tab 4 at 43.

¶23    In addition, J.E. and S.B. testified that no one in their unit had been sent to formal training to prepare for the Level III IAT Certification test. HCD (testimonies of J.E. and S.B.). J.E. explained that employees were allowed time while on duty to study for their certification tests and that there were a variety of computer-based training programs available for the employees to use. HCD (testimony of J.E.). K.W., the only other employee in the appellant's network operations team whose position required him to obtain the Level III IAT Certification, obtained the certification without attending formal training. HCD (testimonies of J.E., S.B., and K.W.). Thus, there is no indication that the agency treated the appellant any differently than any other employee whose position required Level III IAT Certification.

¶24    The appellant further argues that the agency violated DOD Directive 8750.01-M by failing to provide him training. PFR File, Tab 1 at 6, 19-29, Tab 4 at 6-7. The provision of DOD Directive 8750.01-M cited by the appellant provides that "[e]ach category, specialty, and skill level has specific training and certification requirements . . . These training and certification requirements must be provided by the Department of Defense at no cost to the government employees." PFR File, Tab 1 at 6; IAF, Tab 4 at 83, DOD Directive 8750.01-M, C2.3.1. We are not persuaded by the appellant's contention that this provision

required the agency to provide him formal training to prepare for the IAT Level III Certification test. A more plausible reading of this provision is that, when specific training for a position is required, the agency must provide that training. When, as here, certification is required, but not any particular training, DOD Directive 8750.01-M does not impose an obligation on the agency to provide formal training to prepare for the certification. IAF, Tab 4 at 83-85. In any event, even if the agency had denied a properly submitted request for training by the appellant, such matter was within the agency's managerial discretion and would not, on its own, raise an inference of discrimination.

¶25    In light of the foregoing, we agree with the administrative judge that the appellant has failed to establish that discrimination was a motivating factor in the agency's decision to remove him for failing to obtain Level III IAT Certification. ID at 12-15.

The administrative judge correctly determined that removal is within the tolerable limits of reasonableness.

¶26    When, as here, all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Penland v. Department of the Interior*, 115 M.S.P.R. 474, ¶ 7 (2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (articulating a nonexhaustive list of 12 factors that are relevant in assessing the penalty to be imposed for an act of misconduct). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Penland*, 115 M.S.P.R. 474, ¶ 7. The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty clearly exceeds the bounds of reasonableness. *Id*. The Board has held that, in an

adverse action resulting from an employee's failure to maintain a condition of employment, the most relevant *Douglas* factors are: (1) the nature of the offense; (2) its effect on an appellant's performance of the job; and (3) the availability and effect of alternative sanctions. *Id.*, ¶ 8.

¶27    In this case, the administrative judge found that the deciding official considered the relevant evidence, appropriately weighed the *Douglas* factors, and exercised his managerial discretion within the tolerable limits of reasonableness. ID at 16-18; IAF, Tab 4 at 25-31. Specifically, she noted that the deciding official considered the offense to be serious, found that it precluded the appellant from performing the essential functions of his position, and that, although the agency considered reassigning him to a vacant position that did not require Level III IAT Certification, the agency was unable to find a vacant position for which he qualified. ID at 16-17; IAF, Tab 4 at 25-31. The administrative judge also explained that the deciding official found that the appellant had little potential for rehabilitation because he had been unable to obtain the requisite certification despite being given time to study while on duty and more than 6 months to prepare to take the certification examination. ID at 17; IAF, Tab 4 at 29. The administrative judge further noted that the deciding official considered mitigating factors, such as the appellant's 1 year of service with the agency and lack of prior discipline, but concluded that these factors did not outweigh the seriousness of the offense. ID at 17; IAF, Tab 4 at 26, 30.

¶28    On review, the appellant argues that the penalty of removal is outside the bounds of reasonableness because he only learned of the Level III IAT Certification requirement in January 2013 and argues again that he requested formal training, but the agency failed to provide it. PFR File, Tab 1 at 29-31. He further argues that the deciding official should have given "proper weight" to other mitigating factors, such as his heavy work load, his illness, his mother's illness, and his 2-hour commute. *Id.* at 31.

¶29       As discussed above, we disagree with the appellant's contention that the agency was required to provide him formal training to obtain the Level III IAT Certification. Furthermore, even if the appellant did not learn that he was required to obtain Level III IAT Certification until January 2013, although he was appointed in October 2012, he was still afforded nearly 10 months to obtain the certification. IAF, Tab 4 at 43-45, 48, 51. The appellant's other arguments constitute mere disagreement with the weight the deciding official afforded to each *Douglas* factor, which does not provide any basis for review. PFR File, Tab 1 at 29-31, Tab 4 at 8-9; *see Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 25 (2013) (explaining that the issue in determining if the Board should exercise its mitigation authority is whether the agency considered the relevant *Douglas* factors and reasonably exercised management discretion in making its penalty determination). Accordingly, we find no basis to disturb the administrative judge's determination that the deciding official considered the relevant *Douglas* factors and exercised managerial discretion within the tolerable limits of reasonableness.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

      The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

      You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to

representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                      _____
                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.